UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICIO PRADO DIAZ, *et al.*, | Case No. 1:26-cv-00066-JLT-CDB (HC) |
| Petitioners, | FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| KRISTI NOEM, *et al.*, | (Doc. 1) |
| Respondents. | **14-DAY OBJECTION PERIOD** |

Petitioners Mauricio Prado Diaz and Jaime Barcenas Dominguez ("Petitioners"), federal detainees proceeding by counsel, initiated this action on January 5, 2026, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241 and a motion for temporary restraining order ("TRO"). (Docs. 1, 3). Petitioners are in custody the of Immigration and Customs Enforcement ("ICE") at the California City Detention Facility, located in California City, California. *Id.* ¶ 1. Respondents are Kristi Noem (Secretary of the Department of Homeland Security), Todd Lyons (Acting ICE Director), Pamela Bondi (Attorney General of the United States), Nancy Gonzalez (Acting Director of Bakersfield ICE Field Office), and Christopher Chestnut (Warden, California City Detention Facility). *See id.* On January 5, 2026, the Court denied Petitioners' motion for TRO. (Doc. 4).

For the reasons set forth herein, the undersigned recommends that Petitioners' petition for writ of habeas corpus be granted.

1

## I.    Relevant Background

The relevant facts largely are undisputed.  *See* (Doc. 9 at 2).  Petitioners are both natives and citizens of Mexico who unlawfully entered the United States. *See* (Doc. 3-1 at 9, 18).  Petitioner Prado Diaz entered the United States from Mexico at or near San Ysidro, California, on or about February 10, 1997.  *Id.* at 9.  It is unclear from where and when Petitioner Dominguez entered the United States. *See id.* at 18 ("[Petitioner Dominguez] entered the United States at or near Unknown, on or about unknown date[.]").

The Petitioners do not allege and the record does not reflect that they were initially arrested and placed in immigration custody at or near the time they respectively entered the United States; Respondents confirm that Petitioners entered the United States without inspections (*see* Doc. 9 at 2).  Petitioner Dominguez was arrested by ICE and issued a Notice to Appear ("NTA") on August 31, 2025, and was placed in pending removal proceedings under section 240 of the INA and currently does not have any hearing scheduled.  (Doc. 1 at 10); *see* (Doc. 3-1 at 18).  Petitioner Prado Diaz was arrested by ICE and issued a NTA on October 6, 2025, and was also placed in pending removal proceedings under section 240 of the INA with a hearing set for March 10, 2026. (Doc. 1 at 10); *see* (Doc. 3-1 at 9).  In the NTAs, DHS alleges that Petitioners were "not then admitted or paroled after inspection by an Immigration Officer[ or at] that time [Petitioners] arrived at a time and place other than as designated by the Attorney General."  *See* (Doc. 3-1 at 9, 18). Petitioners were deemed removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") because DHS considered Petitioners "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General."  *See id.*  Petitioners are currently detained at the California City Detention Facility.  (Doc. 1 at 9, 10).

Petitioners allege that according to the policy of the Executive Office for Immigration Review ("EOIR"), they are not eligible for a bond redetermination hearing before an immigration judge in light of the Board of Immigration Appeals' ("BIA") precedent decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), as Petitioners are charged with having entered the United States without inspection or admission.  *Id.*

In their documents filed in support of their motion for TRO, immigration judge Carlos Maury issued denials of Petitioners' requests for custody redetermination pursuant to 8 C.F.R. § 1236 on November 25, 2025, and on December 23, 2025, although it is unclear which Petitioner(s) made each request. (Doc. 3-1 at 2, Declaration of Megan Brewer ("Brewer Decl.") ¶ 6); *see id.* at 24-29. In the November 25, 2025, decision, the immigration judge notes that the custody redetermination request was denied based on "INA section 235(b) and [the] Laken Riley Act" while in the December 23, 2025, decision, the immigration judge denied the request on the grounds of "[n]o jurisdiction" based on the opinion in *Bautista v. Noem*, 5:25-cv-01873-SSS-BFM (C.D. Cal.), and further, that the partial grant of summary judgment "does not constitute a judgment." *Id.* at 24-29. The December 23, 2025, decision further denied relief upon reconsideration based on "[n]o jurisdiction. No changed circumstances have been established for motion to reconsider the [immigration court's] prior custody redetermination decision." *Id.* at 28-29; *see* Brewer Decl. ¶ 6 ("…December 23, 2025 denial of a motion to reconsider.").

## II.    Governing Authority

### A.    The Writ of Habeas Corpus

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. *See* 28 U.S.C. § 2241. A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

Relevant here, "in cases that do not involve a final order of removal, federal habeas corpus jurisdiction remains in the district court" pursuant to 28 U.S.C. § 2241 where the petitioner "challenges his confinement on statutory and constitutional grounds." *Nadaraja v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006); accord *Flores-Torres v. Mukasey*, 548 F.3d 708, 713 (9th Cir. 2008) (holding "the district court has jurisdiction over Torres's habeas petition challenging his detention" in ICE custody).

### B.    Statutory Immigration Framework (8 U.S.C. § 1225 and § 1226)

Two statutes govern the detention and removal of inadmissible noncitizens from the United

States: 8 U.S.C. § 1226 and § 1225.  Relevant here is the legal background accurately presented by the district court in *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503 (N.D. Cal. Sept 12, 2025):

> **1.    Full Removal Proceedings and Discretionary Detention (§ 1226)**
>
> The "usual removal process" involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section § 1226 provides that while removal proceedings are pending, a noncitizen "may be arrested and detained" and that the government "may release the alien on ... conditional parole." § 1226(a)(2); *accord Thuraissigiam*, 591 U.S. at 108 (during removal proceedings, applicant may either be "detained" or "allowed to reside in this country"). When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). A noncitizen will be released if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* (citing 8 C.F.R. § 236.1(c)(8)).
>
> "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 CFR §§ 236.1(d)(1)). If, at this hearing, the detainee demonstrates by the preponderance of the evidence that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his or his release. *Diaz*, 53 F.4th at 1197 (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Once released, the noncitizen's bond is subject to revocation. Under 8 U.S.C. § 1226(b), "the DHS has authority to revoke a noncitizen's bond or parole 'at any time,' even if that individual has previously been released." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019). However, if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change in circumstance. *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021). Where the release decision was made by a DHS officer, not an immigration judge, the Government's practice has been to require a showing of changed circumstances before re-arrest. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017).
>
> **2.    Expedited Removal and Mandatory Detention (§ 1225)**
>
> While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under

§§ 1225(b)(1) and (b)(2)," a process that provides for expedited removal. *Jennings*, 583 U.S. at 303 (2018). Under § 1225, a noncitizen "who has not been admitted or who arrives in the United States" is considered "an applicant for admission." 8 U.S.C. § 1225(a)(1). For certain applicants for admission, 8 U.S.C. § 1225 authorizes "expedited removal." § 1225(b)(1). § 1225(b)(1) provides that:

> "If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 USCS § 1158] or a fear of persecution."

Sections 8 U.S.C. § 1182(a)(6)(C) and 1182(a)(7) respectively refer to noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. Clause (iii) of § 1225(b)(1) allows the Attorney General (who has since delegated the responsibility to the Department of Homeland Security Secretary) to designate for expedited removal noncitizens "who ha[ve] not been admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." § 1225(b)(1)(A)(iii)(II).

To summarize, under § 1225(b)(1), two groups of noncitizens are subject to expedited removal. First, there are "arriving" noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. The implementing agency regulations define "arriving alien" as applicants for admission "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. The second group –designated noncitizens –includes noncitizens who meet all of the following criteria: (1) they are inadmissible due to lack of a valid entry document or misrepresentation; (2) they have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) they are among those whom the Secretary of Homeland Security has designated for expedited removal. *Thuraissigiam*, 591 U.S. at 109; § 1225(b)(1).

"Initially, DHS's predecessor agency did not make any designation [under (3)], thereby limiting expedited removal only to 'arriving aliens,'" that is, noncitizens encountered at ports of entry. *Make the Rd. N.Y. v. Noem*, No. 25-cv-190 (JMC), 2025 U.S. Dist. LEXIS 169432, at *14 (D.D.C. Aug. 29, 2025). In the following years, DHS extended by designation expedited removal to noncitizens who arrive by sea and who have been present for fewer than two years, and to

noncitizens apprehended within 100 air miles of any U.S. international land border who entered within the last 14 days. *Id.* This was the status quo until January 2025, when the Department of Homeland Security revised its § 1225 designation to "apply expedited removal to the fullest extent authorized by statute." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). Under this designation, expedited removal applies to noncitizens encountered *anywhere* within the United States, who have been in the United States for less than two years and are inadmissible for lack of valid documentation or misrepresentation. In short, expedited removal was expanded to apply for the first time to vast numbers of noncitizens present in the interior of the United States.

Under the expedited removal statute § 1225(b)(1), if an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." §§ 1225(b)(1)(A)(i)–(ii). If the asylum officer determines that the applicant has a "credible fear," the applicant "receive[s] 'full consideration' of his asylum claim in a standard removal hearing." *Thuraissigiam*, 591 U.S. at 110. If the officer determines there is no "credible fear," the officer "shall order the alien removed from the United States without further hearing or review." § 1225(b)(1)(B)(iii). However, the officer's decision may be appealed by the applicant to an immigration judge, who must conduct the review "to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination." *Id.* Detention under § 1225(b)(1) is "mandatory" "pending a final determination of credible fear of persecution and if found not to have such a fear, until removed." *Id.* (citing § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.")

[Section] 1225 also contains a provision that applies to applicants for admission not covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. This provision, 1225(b)(2), states that, subject to statutory exceptions, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [full removal proceedings] of this title." § 1225(b)(2). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their full removal proceedings are pending. This is in contrast to the default detention regime under § 1226(a), which allows for discretionary release and review of detention through a bond hearing.

### 3.     The Government's Recent Change in Position

Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation. This practice was codified by regulation. The regulations implementing the Illegal

Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") state that "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In fact, the government has conceded in other contexts that "DHS's long-standing interpretation has been that 1226(a) [discretionary detention] applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended." Dkt. No. 17 (citing Solicitor General, Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954)) . . .

In 2025, however, the Government's policy changed dramatically. The DHS revised its § 1225 designation to "apply expedited removal *to the fullest extent authorized by statute.*" Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025) (emphasis added). The Secretary of Homeland Security memorandum directed federal immigration officers to "consider ... whether to apply expedited removal" to "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied." Dkt. No. 1 at ¶ 33. Officers are encouraged to "take steps to terminate any ongoing removal proceeding and/or any active parole status." *Id.* The memorandum states that DHS shall take the actions contemplated by the memorandum "in a manner that takes account of legitimate reliance interests," but states that "the expedited removal process includes asylum screening, which is sufficient to protect the reliance interests of any alien who has applied for asylum or planned to do so in a timely manner." Huffman Memorandum (Jan. 23, 2025).

Since mid-May of 2025, the Department of Homeland Security has made a practice of appearing at regular removal proceedings in immigration court, moving to dismiss the proceedings, and then re-arresting the individual in order to place them in expedited removal proceedings. Dkt. No. 1 at ¶¶ 35–40. If the immigration judge does not dismiss the full removal proceedings, ICE still makes an arrest, apparently in reliance on § 1225(b)(2)'s detention provision.

*Salcedo Aceros*, 2025 WL 2637503 at *1-4 (internal footnotes omitted).

## III.   Exhaustion

### A.   Governing Authority

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)). The Ninth Circuit, however, requires that, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez*, 239 F.3d at 1047 (citing *United*

7

*States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)). "Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'" *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)). "Exhaustion can be either statutorily or judicially required.  If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)).  "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered…. Lower courts … [must] first determin[e whether] the exhaustion requirement has been satisfied or properly waived." *Id.* (internal citations omitted); *see Murillo v. Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the application of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly to be disregarded.").

**B.    Analysis**

Petitioners contend in their since-denied motion for TRO that the prudential exhaustion requirement should be waived as exhaustion does not require them "to be forced to endure the very harm they are seeking to avoid by seeking a bond hearing before the immigration judge."  (Doc. 3 at 24).  Petitioners assert that each day they remain in detention "is one in which their statutory and constitutional rights have been violated." *Id.*

Respondents do not address exhaustion of administrative remedies in their response to the petition. *See generally* (Doc. 9).

The undersigned finds that the prudential exhaustion requirement should be waived as it would be futile to seek release by administrative means.  Specifically, because Respondents contend that Petitioners are subject to indefinite mandatory detention under 8 U.S.C. § 1225(b), *see* (Doc. 9 at 2), under that framework, Petitioners have no statutory right to a bond hearing during their respective courses of detention and therefore lack recourse through statutory or administrative means. *See Jennings v. Rodriguez*, 583 U.S. 281, 282 (2018) ("§§ 1225(b) … do[e]s not give detained aliens the right to periodic bond hearings during the course of their detention."); *Rodriguez*

8

*Diaz v. Garland*, 53 F. 4th 1189, 1201 (9th Cir. 2022).  Further, the BIA has recently held that all noncitizens present within the country without admission are seeking admission pursuant to § 1225, rendering any administrative relief futile.  *See J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *7 n.9 (E.D. Cal. Oct. 27, 2025) ("In addition, pursuit of administrative remedies would almost certainly be futile given the BIA's recent holding that all noncitizens present in the United States without admission are 'seeking admission' for purposes of 8 U.S.C. § 1225(b)(2)(A) and must be detained.") (citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025)).

For these reasons and because Respondents do not object to and do not otherwise address Petitioners' arguments that exhaustion should be waived, the undersigned recommends that the prudential exhaustion requirement be waived for Petitioners' claims for habeas corpus relief.  *See, e.g, Chavez v. Noem*, No. 3:25-cv-02325-CAB-SBC, 2025 WL 2730228, at *3 (S.D. Cal. Sept. 24, 2025) (waiving prudential exhaustion requirement because the BIA "already applied its expertise in deciding and designating" *Hurtado* as precedential, pursuant to which detainees are subject to mandatory detention without bond under § 1225(b)(2)); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025) ("The Ninth Circuit has recognized 'the irreparable harms imposed on anyone subject to immigration detention.'") (citing *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)); *J.A.C.P.*, 2025 WL 3013328, at *7 n.9.

## IV.   <u>Discussion</u>

Petitioners assert four causes of action in their petition: violation of 8 U.S.C. § 1226(a) for unlawful denial of bond hearing (Claim 1); violation of the Administrative Procedure Act for unlawful denial of bond (Claim 2); violation of procedural due process under the Fifth Amendment to the U.S. Constitution (Claim 3); and violation of the INA (Claim 4).  (Doc. 1 at 10-13).

As set forth below, because the undersigned finds that Respondents have violated Petitioners' statutory rights as their detention is properly governed by 8 U.S.C. § 1226(a) and they have not been afforded a bond redetermination hearing, and because Petitioners' other claims seek the same or similar relief (*i.e.*, a bond hearing), the undersigned declines to address Petitioners'

other claims.[1]

### A.    Statutory Scheme: 8 U.S.C. § 1226(a) Applies

Petitioners contend that they are being held in violation of their right to a bond hearing before in immigration judge pursuant to 8 U.S.C. § 1226(a), based on Respondents' reliance on the BIA's holding in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), that individuals charged with having entered the United States without inspection are ineligible for bond redetermination hearings before an immigration judge as such individuals are seeking admission and fall within the detention scheme under 8 U.S.C. § 1225(b)(2)(A).  (Doc. 1 ¶¶ 2, 27).  Petitioners contend that § 1226(a) applies, not § 1225(b), and therefore Petitioners' detention without affording them a bond redetermination before an immigration judge violates their statutory rights under § 1226(a).  *Id.* Petitioners therefore seek the Court order that Respondents provide them with a bond hearing before an immigration judge pursuant to § 1226(a).  *Id.* ¶ 9.

Respondents contend that Petitioners are "applicants for admission" within the meaning of 8 U.S.C. § 1225(a) and are subject to mandatory detention by ICE under § 1225(b)(2) during the pendency of their removal proceedings.  (Doc. 9 at 2).  Respondents rely upon *Matter of Yajure Hurtado* in arguing that Petitioners, as applicants for admission, are subject to mandatory detention and are thus ineligible for bond hearings.  *Id.*  Respondents acknowledge that two district courts within the Ninth Circuit have recently vacated or stayed DHS's July 8, 2025, "Interim Guidance Regarding Detention Authority for Applicants for Admission" which "takes the position that all applicants for admission within the meaning of [] § 1225(a) are subject to mandatory detention under [] § 1225(b)" as contrary to law under the Administrative Procedure Act ("APA").  *Id.* at 3 (citations omitted).

---

[1] It is unclear whether Petitioners' procedural due process claims are meritorious because the record does not indicate Petitioners were ever initially detained and released from immigration custody such that Petitioners have a liberty interest to remain free from re-detention.  Nevertheless, the undersigned need not reach Petitioners' constitutional claim given that Petitioners are entitled to the full relief they request on their claim alleging a statutory violation by Respondents of the INA. *See, e.g., Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1031 (N.D. Cal. 2025); *Ramazan M. v. Andrews*, No. 1:25-cv-01356-KES-SKO (HC), 2025 WL 3145562, at *5-6 (E.D. Cal. Nov. 10, 2025).

10

Based on the allegations of the petition and the record summarized above, the Court presumes that Petitioners were first arrested and detained by immigration authorities (ICE) upon the reported dates of their arrest resulting in their current terms of detention: for Petitioner Dominguez, on August 31, 2025, and for Petitioner Prado Diz, on October 6, 2025.  Petitioners were issued NTAs following their arrests by ICE and placed in removal proceedings under section 240 of the INA.  (Doc. 1 at 10); *see* (Doc. 3-1 at 9, Ex. 1; at 18, Ex. 2).

Section 1225 governs the detention of noncitizens "seeking admission" into the United States.  *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018); *see id.* at 282 ("§§ 1225(b) … do[e]s not give detained aliens the right to periodic bond hearings during the course of their detention.").  In contrast, § 1226 sets forth a "default rule" for noncitizens already present within the United States.  *Id.* at 288.  Relevant here, § 1225(b)(1) applies to aliens "arriving in the United States" or aliens who have "not been admitted or paroled into the United States" and have not "affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the [two]-year period immediately prior to the date of the determination of inadmissibility."  8 U.S.C. § 1225(b)1)(A)(i), (iii)(II).

Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A).  For § 1225(b)(2)(A) to apply, an examining immigration officer must determine that the individual is (1) an "applicant for admission," (2) "seeking admission," and (3) "not clearly and beyond a doubt entitled to be admitted."  *See Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1113 (E.D. Cal. 2025) (citing *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass. 2025)).

Here, bother Petitioners already were present in the United States when they were arrested and detained by ICE in 2025.  With respect to Petitioner Prado Diaz, the record reflects he was in the United States for over 28 years following his entry in 1997.  Although immigration officials were unable to determine when Petitioner Dominguez arrived in the United States, it is clear that he was arrested and detained *after* he was already present in the United States for some unspecified

11

time. Moreover, Respondents do not argue, nor do the records show, that Petitioner Dominguez has not been physically present in the United States continuously for the two-year period immediately prior the date of the determination of inadmissibility under § 1225(b)(1) to lawfully place him in expedited removal proceedings and mandatory detention under that statutory regime. *See* 8 U.S.C. § 1225(b)(1)(A)(iii).

Based on these facts, the plain language of § 1225(b) demonstrates that it is inapplicable to Petitioners. Petitioners are not "arriving" in the United States but rather arrived here some time before they were arrested in 2025. Further, Respondents have not shown that an examining immigration officer made any determination under § 1225(b)(2)(A) that Petitioners are "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." *See Lepe*, 801 F. Supp. 3d at 1113. Indeed, the NTAs issued to Petitioners indicate that upon their arrest, Petitioners were placed into removal proceedings under section 240 of the INA, further illustrating that DHS chose to place Petitioners in removal proceedings with greater procedural protections instead of pursuing expedited removal under § 1225. *See Garcia v. Chestnut*, No. 1:25-cv-01907-JLT-CDB, 2025 WL 3771348, at *8 (E.D. Cal. Dec. 31, 2025) (citing *Mata Velasquez v. Kurzdorfer*, No. 25-cv-493-LJV, 794 F. Supp. 3d 128, 143 (W.D.N.Y. 2025) ("Because DHS chose to place Mata Velasquez in section 240 proceedings instead of pursuing expedited removal in the first instance—even though it was not required to do that—the government vested Mata Velasquez with the rights that Congress guaranteed non-citizens in those proceedings.").

Nor do Respondents argue that Petitioners are properly subject to mandatory detention under some other qualifying detention provision. The record does not show that Petitioners are subject to mandatory detention under 8 U.S.C. § 1226(c) by reason of having committed a qualifying offense as considered in that statute. *See* 8 U.S.C. § 1226(c); *Kakkar v. Chestnut*, 1:25-CV-1627 JLT SAB, 2025 WL 3638298, at *4 (E.D. Cal. Dec. 15, 2025). Petitioners' removal proceedings remain pending, no orders of removal have become administratively final, and therefore Petitioners' detention is not justified under 8 U.S.C. § 1231. *See* 8 U.S.C. § 1231(a)(1)&(2).

Under these circumstances, and having determined that the mandatory detention framework

12

under § 1225(b) does not apply to Petitioners, the undersigned finds that § 1226(a) provides the proper framework for noncitizens already residing in the United States. *See, e.g.*, *Garcia v. Noem*, 803 F. Supp. 3d 1064, 1076-77 (S.D. Cal. 2025).  In *Garcia*, three petitioners entered the United States and resided in the country for some time before they were arrested and placed into immigration detention in June and July 2025. *Id.* at 1070.  These petitioners, like Petitioners here, were charged by ICE with inadmissibility as being present in the United States without being admitted or paroled. *Id.*  The *Garcia* court found that § 1225(b) did not apply to these petitioners because they were not "seeking admission" within the meaning of that statute and that the petitioners' detention therefore was governed by § 1226(a), including for discretionary detention and a bond determination hearing. *Id.* at 1076-78; *see also Martinez*, 792 F. Supp. 3d at 221 ("[S]ection 1225 governs detention of non-citizens 'seeking admission into the country,' whereas section 1226 governs detention of non-citizens 'already in the country.'") (citing *Jennings*, 583 U.S. at 288-89).

Other courts likewise have found that the text of sections 1225 and 1226, coupled with application of commonly used canons of statutory interpretation, legislative history, and ICE's historical practices predating DHS's recent shift in policy, weigh in favor of finding that section 1226(a)'s discretionary framework governs the detention of noncitizens who, like Petitioners, are already in the country when encountered by immigration authorities. *See Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025); *Otero v. Robbins, et al.*, No. 1:25-cv-1790 CSK, 2025 WL 3704453, at *5 (E.D. Cal. Dec. 22, 2025) (collecting cases, adopting the reasoning of the *Lepe* court, and finding that "[t]his Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting respondents' interpretation of Sections 1225 and 1226"); *Morales-Flores v. Lyons*, No. 1:25-cv-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases and noting "Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful"); *J.Y.L.C. v. Bostock*, No. 3:25-cv-02083-AB, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (citing cases and noting that this conclusion is "consistent with the holdings of dozens of district courts across the country"); *Barco Mercado v. Francis*,-- F. Supp. 3d --, 2025 WL 3295903, at *4

13

(S.D.N.Y. Nov. 26, 2025) (noting that this statutory interpretation "has been challenged in at least 362 cases in federal district courts," with the challengers having prevailed "either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts").

"Under § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an IJ at any time before a removal order becomes final." *Rodriguez Diaz*, 53 F.4th at 1197 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19). "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk, the IJ will order his release." *Id*. (internal quotation and citations omitted).

During their detention, Petitioners requested custody redetermination as provided for under section 1226(a) that were ultimately denied by an immigration judge based on a finding of "no jurisdiction" and no changed circumstances from the initial denial under section 235(b) of the INA and the Laken Riley Act. *See* (Doc. 3-1 at 24-29). Because Petitioners' detention is governed under § 1226(a) and because they were denied a bond hearing for which they were entitled by statute, the undersigned finds that Petitioners have shown a violation of their rights under § 1226(a). Accordingly, the undersigned will recommend the Court grant Petitioners' petition on their claims for violation of § 1226(a) and recommend the Court order Respondents to provide Petitioners with a statutorily-compliant bond hearing as set forth below.

### B.   *Maldonado Bautista* Action

Petitioners refer in their petition to *Maldonado Bautista v. Santacruz*, Case No. 5:25-cv-01873-SSS-BFM (C.D. Cal.) ("*Maldonado Bautista*") and represent that they are members of the "Bond Eligible Class" that are entitled to consideration for release on bond under § 1226(a). *See* (Doc. 1 ¶¶ 34-40; at 12); (Doc. 3-1 at 119, Ex. 5) ("Bond Eligible Class: All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination."); (*Maldonado Bautista,* Doc. 93 at

14

51; Doc. 94). Petitioners assert that Respondents are parties to *Maldonado Bautista* and therefore bound by the declaratory judgment rendered in that case. (Doc. 1 at 12). Petitioners further allege that by denying Petitioners a bond hearing under § 1226(a), Respondents violate their statutory rights under the INA and the judgment rendered in *Maldonado Bautista*. *Id.*

District courts within the Ninth Circuit have diverged in addressing claims similar to Petitioners' implicating the *Maldonado Bautista* class. A district judge within the Eastern District of California concluded that a petitioner who alleges membership in the *Maldonado Bautista* certified class may not seek relief in this district and, instead, must seek to enforce the out-of-district judgment where it was entered (the Central District of California). *See Brave & Free Santa Cruz v. Aragon*, No. 2:24-cv-02312-DAD-JDP, 2025 WL 2324172, at *5 (E.D. Cal. Aug. 12, 2025) (collecting cases and noting "that the undersigned, a district judge in the U.S. District Court for the Eastern District of California, lacks the authority to 'enforce' an injunction issued in the U.S. District Court for the Northern District of California") (citing, *inter alia*, *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992)). Another district judge of this Court concluded that the *Maldonado Bautista* judgment was not binding in this district for different reasons. *Falcon v. Wofford*, No. 1:26-cv-00181-WBS-EFB, 2026 WL 171927, at *2-3 (E.D. Cal. Jan. 22, 2026). In contrast, another magistrate judge of this Court concluded, in still-pending findings and recommendations, that a petitioner-member of the *Maldonado Bautista* may seek to enforce in this district the judgment entered in that action. *J.S. v. Wofford*, No. 1:25-cv-02016 DC SCR, 2026 WL 125258, at *7 (E.D. Cal. Jan. 16, 2026) ("Petitioner is a member of the *Maldonado Bautista* "Bond Eligible" class and thus entitled to class-wide, declaratory relief regarding the illegality of the DHS Interim Guidance.").

The undersigned need not resolve the issue of the enforceability of the *Maldonado Baustista* judgment here given that Petitioners are entitled to the full relief they seek in light of Respondents' violation of their statutory rights under section 1226(a). *See H.F. v. Albarran*, No. 1:25-cv-01795-TLN-EFB, 2025 WL 3691081, at *2 n.5 (E.D. Cal. Dec. 19, 2025) ("Because the Court finds Petitioner's statutory and due process rights were likely violated, it need not address the parties' arguments as to whether Petitioner is a member of the class certified in [Maldonado Bautista]").

15

**C.     Petitioner's Other Claims**

Because the undersigned finds that the Court may grant the full relief Petitioners seek—a bond hearing under § 1226(a)—in recommending that the writ should issue as to Petitioners' claims for violation of § 1226(a), the undersigned declines to address Petitioners' other claims which seek the same or similar relief, including their claims for violation of procedural due process under the Fifth Amendment to the U.S. Constitution.

**V.     Conclusion and Recommendation**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Petitioners' petition for writ of habeas corpus (Doc. 1) be GRANTED.

2.  Respondents be ORDERED to provide Petitioners with a bond hearing in accordance with 8 U.S.C. § 1226(a) within seven (7) days of the date of this Order, in which the parties will be allowed to present evidence and argument about whether Petitioners are a danger to the community and present a flight risk if not detained.  If Respondents do not provide Petitioners with a bond hearing under 8 U.S.C. § 1226(a) as required herein, Petitioner must be immediately released from detention; and

3.  The Clerk of the Court be DIRECTED to enter judgment in favor for Petitioners and close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court.  Local Rule 304(b).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown.  The Court will not consider exhibits attached to the Objections, but a party may refer to exhibits in the record by CM/ECF document and page number.  Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file any

///

///

16

objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **February 6, 2026**

UNITED STATES MAGISTRATE JUDGE